## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ADEDOKUN JAGUN,** | * | |
| | * | |
| Plaintiff | * | |
| | * | Civil No. **PJM 15-2230** |
| v. | * | |
| | * | |
| **LEÓN RODRÍGUEZ,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

## MEMORANDUM OPINION

Adedokun Jagun has brought this suit, *pro se*, against León Rodríguez, Director of U.S. Citizenship and Immigration Services, and ostensibly against James Comey, Director of the Federal Bureau of Investigation (FBI),[1] alleging somewhat nebulous claims that the Court will construe as falling under the U.S. Privacy Act, 5 U.S.C. § 552a, and Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b). Jagun's claims relate to his attempts to amend and expunge information in an FBI criminal history database. The Government has moved to dismiss the suit on the grounds that the Court lacks jurisdiction, and that Jagun has failed to state a claim upon which relief can be granted. Def.'s Mot. Dismiss, ECF No. 11. In the alternative, Rodríguez asks to Court to enter summary judgment in his favor. *Id.* Because the Court finds it lacks jurisdiction over any of Jagun's claims, his lawsuit is **DISMISSED**.

---

[1] Jagun names only León Rodríguez, Director of USCIS, as the Defendant in the case. However, it seems Jagun intended to include the FBI in the lawsuit as well. *See* Compl. at 3, ECF No. 1 (requesting injunctive relief against FBI); ECF No. 1-4 (summons against James Comey, FBI Director). According to the Government, the FBI actually received Jagun's complaint. *See* Mot. Dismiss at 1 n.1, ECF No.11-1. Jagun has also sought summonses against the United States Attorney General and the U.S. Attorney for the District of Maryland. *See* ECF Nos. 1-3, 1-6. Neither the Attorney General nor the U.S. Attorney has been named as a Defendant, has entered an appearance, or appears to have been properly served.

# I. FACTS

The Court focuses principally on facts necessary to decide whether it has subject matter jurisdiction over this case.[2] Accordingly, the following factual background is drawn variously from Jagun's Complaint ("Compl."), ECF No. 1, his Amended Complaint ("Am. Compl."),[3] ECF No. 9, and its Exhibits, and from the Government's Motion to Dismiss or in the Alternative for Summary Judgment ("Mot. Dismiss"), ECF No. 11, and the attached Exhibits.

### Plaintiff's Encounter with U.S. Immigration and Naturalization Service

Jagun, an erstwhile citizen of Nigeria, entered the United States on an F-1 student visa in 1972. *See* Am. Compl. ¶ 1. In January or March[4] of 1975, Jagun had contact with Immigration and Naturalization Service (INS) agents in Boston. He claims he voluntarily walked in to INS offices to request a change to his immigration status that would allow him to work full time to

---

[2] Because the Court is considering whether to dismiss for lack of jurisdiction, it may consider evidence outside the pleadings without converting the proceeding into one for summary judgment. *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (internal quotations omitted); *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) ("[T]he court may consider the evidence beyond the scope of the pleadings to resolve factual disputes concerning [subject matter] jurisdiction").

[3] Jagun has filed a purported "Motion for a Restatement of the Original Complaint," in which he seeks to add factual allegations to his Complaint, append certain Exhibits not originally included, and amend his complaint to seek less in damages. *See* ECF No. 9. The Court will construe this Motion as a Motion to Amend the Complaint. The Government appears to treat it as such, *see* Mot. Dismiss at 3 n.3, and has not opposed the proposed amendments and additions, despite having the opportunity to do so. The Motion is therefore **GRANTED** and the Court will hereafter treat Jagun's Motion as his Amended Complaint. *See* Fed. R. Civ. P. 15(a)(2) (Court should give leave to amend "when justice so requires"); *see also Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978) (error to deny *pro se* civil rights litigant leave to amend complaint even though plaintiff did not state how Motion would cure deficiencies).

[4] It is unclear exactly when and how Jagun had contact with INS. In his Amended Complaint, Jagun appears to claim he visited INS in March 1975. *See* Am. Compl. ¶ 17(c). The Government, however, claims INS investigators "encountered Plaintiff in Boston" on or around 21 January 1975 and that he later "appeared before an immigration officer" on March 21, 1975 – i.e., two separate incidents. *See* Mot. Dismiss at 5. The documentary evidence sheds little light on which is the accurate version of events. The "Record of Deportable Alien" form granting Jagun voluntary departure status lists the "date of action" as January 21. *See* Mot. Dismiss, Ex. 7, ECF No. 11-9. Yet the very same form suggests Jagun was granted voluntary departure status on 21 March. *See id.* Later documents from INS variously allege Jagun was "apprehended" either on January 21, 1975, *see* Mot. Dismiss, Ex. 8, ECF No. 11-10, or March 24, 1975, *see* Mot. Dismiss, Ex. 10, ECF No. 11-12.

support his wife and young son, who had been recently born with a congenital heart defect. *Id.* ¶ 2-5. The record does not show whether Jagun was arrested, apprehended, or presented himself to INS voluntarily at this time.

Regardless, as a result of his contact with INS, Jagun was granted Voluntary Departure status. *Id.*; *see also* Mot. Dismiss, Ex. 7, ECF No. 11-9. Jagun claims the status was "open-ended, with no specified date of departure." Am. Compl. ¶ 5. He claims INS told him that he could stay in the U.S. "for as long as required, and as dictated by [his] son's health condition." *Id.* He also claims INS told him he could "engage in any lawful activity, including full-time employment." *Id.* The Government denies that Jagun's status was open-ended. *See* Mot. Dismiss at 5.

The record includes a form titled "Record of Deportable Alien" filled out by an INS investigator at around this time. *Id.*, Ex. 7, ECF No. 11-9. The investigator, Richard Cummings, gave the following summary of the encounter between Jagun and INS:

> SUBJECT is employed as an "Inspector" earning approximately $140. per week: full-time, evening shift.
>
> He is also a full time student at Southeastern Massachusetts University. He will graduate in June 1975 with a B.A. degree in Political Science.
>
> He has a [U.S. citizen] child born March 1974 in New Bedford who suffers from a congenital heart defect. SUBJECT claims he only worked full-time to pay the bills for his child. He had received permission to work part-time.
>
> Per instructions of DD, 3/21/75 SUBJECT will be given VD [voluntary departure] until 5/30/75. A complete review of his case will be made then.
>
> His child will receive a complete medical examination in May. I requested a copy of the examination for our review.

*Id.*

On March 25, 1975, INS sent a Form I-210 to Jagun at his address in New Bedford, Massachusetts. Mot. Dismiss, Ex. 9, ECF No. 11-11. It states that "[in] accordance with a decision made in your case you are required to depart from the United States at your own expense on or before June 30, 1975." *Id.* The form states that INS issued no order to show cause, which would formally place him in deportation proceedings. *See* Mot. Dismiss, Ex. 6 at 3, ECF No. 11-8; *id.*, Ex. 9, ECF No. 11-11.

At some point over the next few years, Jagun was granted permission to delay his voluntary departure until February 11, 1978 because of his child's medical condition. *See* Mot Dismiss, Ex. 8, ECF No. 11-10. Then, in February 1978, Jagun apparently applied to convert his voluntary departure status back into an F-1 student visa. Am. Compl. ¶ 7. The request was denied. Mot. Dismiss, Ex. 8, ECF No, 11-10.  INS eventually granted Jagun an extension of his voluntary departure deadline until September 15, 1978, and then again until March 15, 1979. *Id.* at 6. Jagun departed the United States on December 14, 1978 and returned lawfully the following month. Am. Compl. ¶ 8-9; Mot. Dismiss, Ex. 6 ¶ 12, ECF No. 11-8. Jagun later left the United States for Nigeria in 1979 and remained there until October 1995, when he returned to the United States. Compl. ¶ 21-22.

On July 26, 2002, Jagun was naturalized as a U.S. citizen. Mot. Dismiss, Ex. 11, ECF No. 11-13.[5]

**Plaintiff's Criminal History Record**

The above-described contact between Jagun and INS apparently formed the basis of Jagun's FBI Identification Record, which is the subject of his Complaint.

An FBI Identification Record (known as a "criminal history record" or "rap sheet") contains information from fingerprint submissions received by the FBI from other government

---

[5] Jagun claims (apparently erroneously) that he was naturalized in 2001. *See* Compl. ¶ 23.

authorities in connection with arrests.  28 C.F.R. § 16.31; *see* Mot. Dismiss, Ex. 12 ¶ 3, ECF No.

11-14. The information includes the agency that submitted the fingerprints, the date the person

was arrested or received by the agency, the charge, and the disposition of the arrest. *Id*. It is

produced by the FBI's Criminal Justice Information Services Division (CJIS). *Id*.

      At the time Jagun filed his Complaint, his criminal history record showed the following:

    - FBI IDENTIFICATION RECORD – FBI NO-915779
      1- ARRESTED OR RECEIVED 1975/03/21
        AGENCY – USINS BOSTON (MAINSBS00)
         AGENCY CASE – A20750987
         CHARGE 1- VIOLATION OF IMMIGRATION LAWS
         ADDITIONAL ARREST DISPOSITION – DEPORTATION
         PROCEEDINGS

Am. Compl., Ex. 4, ECF No. 9-5; *see also* Mot. Dismiss, Ex. 12 ¶ 6, ECF No. 11-14.

      Jagun's immigration file contains a "Final Disposition Report" which states that Jagun

was "arrested or received" on March 24, 1975, and lists his "arrest no." as A20 750 987. Mot.

Dismiss Ex. 10, ECF No, 11-12. It states the "offenses charged at arrest" to be "violation of

Immigration laws." *Id*. The form contains instructions for sending the form to the FBI. *Id*.

According to the Declaration of Craig Raynsford, legal advisor to U.S. Immigration and Customs

Enforcement (ICE), this is a "copy of the form that would have been sent to the FBI for creation

of the record that now exists in the FBI Criminal Justice Information System." Mot. Dismiss, Ex.

6 ¶ 9, ECF No. 11-8.

      Jagun has consistently maintained there was "never any arrest of, or deportation

proceedings commenced against, him by the U.S. Immigration Service in 1975, or at any time

thereafter." Am. Compl. ¶ 12.

      On March 6, 2002, Jagun sued the directors of INS and the FBI in this Court after a

"background investigation regarding employment" showed that he was "arrested in Boston,

Massachusetts on 3/21/75 for violating immigration law." Mot. Dismiss, Ex. 1 at 2, ECF No. 11-3; *see also* Mot. Dismiss, Ex. 5, ECF No. 11-7 (docket for *Jagun v. Director, INS, et al.*, Civ. No. 02-701-FNS ("*Jagun I*")). Jagun claimed the FBI record affected his "job and entrepreneurship possibilities" and sought injunctive relief ordering that the FBI record be expunged. *Id.* at 2-3. In response, the defendants sought to dismiss the case, in part because the Government had already released the records, and in part because Jagun had not sought to amend or correct the records administratively pursuant to the Privacy Act. *Id*. at 8-9.

On June 24, 2002, Jagun filed a "Motion to Withdraw Action" with the court explaining that, since the documents and materials he sought had been released, there was no longer any need for his lawsuit, and that he would instead seek administrative remedies. Mot. Dismiss, Ex. 3, ECF No. 11-5. Judge Frederic Smalkin of this Court granted Jagun's Motion that same day, dismissing the case with prejudice. *Id.*, Ex. 4, ECF No. 11-6. Following dismissal of the lawsuit, there is no record that Jagun took further action to amend his rap sheet until 2013,[6] when Jagun wrote to U.S. Senator Barbara Mikulski asking her to intervene. *See* Mot. Dismiss, Ex. 14, ECF No. 11-16. Senator Mikulski's staff contacted USCIS[7] in February 2013; USCIS advised them that it did not control the FBI's records, and referred them to someone else within Department of Homeland Security. Mot. Dismiss at 9; see also *id.*, Ex. 14.[8]

---

[6] That said, in 2007, in response to a job application, Jagun received a letter from the District of Columbia Public Schools (DCPS) informing him that the results of a background check were unsatisfactory, and attaching the FBI Identification Record detailing his encounter with INS in 1975. Am. Compl., Ex. 5, ECF No. 9-6.

[7] Following the creation of the Department of Homeland Security (DHS) in 2003, INS functions were dispersed among three different agencies within DHS: Immigration and Customs Enforcement (ICE), USCIS, and Customs and Border Protection (CPB). ICE is responsible for, among other things, identifying and apprehending removable aliens, detaining individuals, and removing illegal aliens from the United States. *See* Mot. Dismiss, Ex. 6 ¶ 5, ECF No. 11-8.

[8] There is no documentation in the record of USCIS's response to Senator Mikulski, and the Government cites to none when it makes this assertion in its Motion.

On April 28, 2014, the FBI's CJIS Criminal History Information and Policy Unit

(CHIPU)[9] received a letter from Jagun requesting expungement of his criminal record history.

Mot. Dismiss, Ex. 12 ¶ 7, ECF No. 11-14.  That same day, CHIPU faxed Jagun's request to ICE,

the agency that submitted the data at issue, in accordance with FBI regulations,[10] and requested

ICE to review Jagun's correspondence and advise CHIPU of any updates or changes to the

information. *Id.* ¶ 8.

Meanwhile, Jagun apparently also sought separate relief from the immigration services.

On October 3, 2014, he received an email from DHS's Office of the Citizenship and Immigration

Services Ombudsman regarding a request for assistance. *See* Am. Compl., Ex. 6, ECF No. 9-7.

The Ombudsman advised Jagun to file a FOIA request and then seek correction of a file through

Form G-639. *Id.* It signed off by closing Jagun's request because it was "beyond [the

Ombudsman's] statutory authority." *Id.*

On January 7, 2015, ICE e-mailed a response to CJIS suggesting an amendment to

Jagun's March 1975 arrest record. Mot. Dismiss, Ex. 6 ¶ 15, ECF No. 11-8. ICE's response

included the following instruction:

> Please update your records as follows, "Paperwork in the individual's file
> indicates an encounter took place in 1975 during which an unsigned Form I-265,
> Application for Order to Show Cause, was filled out suggesting that he be granted
> voluntary departure without the issuance of an Order to Show Cause. The file
> further demonstrates that the individual was subsequently granted an extension of

---

[9] CHIPU, housed within CJIS, provides information and services to support the interstate exchange of criminal history records. *See* Mot. Dismiss, Ex. 12 ¶ 3, ECF No. 11-14. Among its responsibilities, CHIPU responds to written communications from private citizens, law enforcement agencies, law offices, and others, regarding identity history records. *Id.*

[10] Under 28 C.F.R. § 16.34, if the subject of an FBI identification record believes that his record is incomplete or inaccurate, and wishes to change, correct, or update the alleged deficiency, he should make the application directly to the agency which contributed the disputed information. *See* 28 C.F.R. § 16.34. The subject can also direct the challenge to FBI CJIS; the FBI will then forward the challenge to the agency which submitted the data requesting that the agency verify or correct the challenged entry. *Id.* Upon receipt of an official communication directly from the agency which contributed the original information, FBI CJIS will make any changes necessary in accordance with the information supplied by the originating agency. *Id.*

time to depart the United States due to his son's medical condition and treatment being administered in the United States. The individual was eventually naturalized as a United States Citizen on July 26, 2002."

*Id.* at Attach. A. CHIPU did not receive the response, however, because ICE sent it to a defunct e-mail address. *Id.* ¶ 15; *id.*, Ex. 12 ¶ 11-12, ECF No. 11-14. Until Jagun filed his present lawsuit, CJIS knew nothing about ICE's response requesting an update to the record, and ICE did not know that CJIS had never received its email. Mot. Dismiss, Ex. 6 ¶ 15, Ex. 12 ¶¶ 11-12, ECF Nos. 11-8, 11-14.

On July 29, 2015, Jagun filed his present Complaint in this Court seeking injunctive relief and damages ostensibly for alleged violations of the U.S. Privacy Act, 5 U.S.C. § 552a, and FTCA, 28 U.S.C. §§ 1346(b), 2401(b), 2671-80.[11] He claims that the allegedly erroneous information in his criminal record history has caused him to lose considerable income and benefits given his educational qualifications (he holds Bachelors, Masters, and Ph.D. degrees from three U.S. universities). *See* Am. Compl. ¶¶ 6, 17-19. He seeks an injunction ordering that the allegedly incorrect information in FBI and USCIS records be expunged, an order requiring USCIS and the FBI to send him a record of compliance with such order, and damages in the amount of $10,000. *Id.* ¶¶ 17-19.

On September 29, 2015, CHIPU learned of ICE's response to its correspondence regarding Jagun's record. Mot. Dismiss Ex. 12 ¶ 11. On November 16, 2015, ICE sent another e-

---

[11] Jagun does not claim to bring his case under any specific statutes or causes of action. In its Motion, the Government construes his pleadings to allege violations of the Privacy Act and FTCA. *See* Mot. Dismiss at 3. In his Response, Jagun does not dispute the Government's interpretation of the Complaint, and indeed cites portions of the Privacy Act and talks generally about "negligence" and "intentional" or "willful" acts. *See* Pl.'s Resp. Mot. Dismiss ¶¶ 17, 27-28. Since Jagun appears to have no objection to the Government's interpretation of his pleadings, the Court will construe Jagun's complaint to be brought under these statutes. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' *Estelle*, 429 U.S. at 106, 97 S.Ct. 285, and '*a pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,'" *id.* (internal quotation marks omitted). *Cf.* Fed. R. Civ. Pro. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

mail to CJIS requesting that Jagun's record be updated thus: "Subject was granted voluntary departure. Subject subsequently obtained legal permanent resident status. On July 26, 2002, subject became a United States Citizen." See *Id.* ¶ 13; *see also* Ex. 6. Attach. B. On the same day, CJIS updated Jagun's FBI identification record according to ICE's request. Mot. Dismiss, Ex. 12 ¶ 13, ECF No. 11-14.

The Government has asked the court to dismiss all claims in Jagun's complaint for lack of subject matter jurisdiction or failure to state a claim; in the alternative, the Government seeks summary judgment on all claims. ECF No. 11. Jagun has opposed that Motion. ECF No. 14.[12]

## II. STANDARDS OF LAW

Federal courts are courts of limited subject matter jurisdiction. They "possess only the jurisdiction authorized them by the United States Constitution and by federal statute." *See United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Bowles v. Russell*, 551 U.S. 205 (2007)). Generally, a federal court may not rule on the merits of a case without first deciding that it has jurisdiction over the category of claim in suit. *Sinochem Int'l Co. Ltd. v. Malaysia Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citation omitted). When a district court determines that it lacks subject matter jurisdiction over an action, the court must dismiss the action. *Vuyyuru*, 555 F.3d at 347 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006)).

A party may move pursuant to Federal Rule of Civil Procedure 12(b)(1) for the court to dismiss a suit where the court lacks subject matter jurisdiction over the claims alleged in the complaint.  Fed. R. Civ. P. 12(b)(1). As the party asserting jurisdiction, the plaintiff bears the burden of proving that the district court has subject matter jurisdiction. *See Richmond,*

---

[12] The Government declined to file a reply brief in support of its Motion. *See* ECF No. 15.

*Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Indeed, it is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). In considering whether to dismiss for lack of jurisdiction, the court may consider "evidence outside of the pleadings without converting the proceeding into one for summary judgment." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (quoting *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768); *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) ("[T]he court may consider the evidence beyond the scope of the pleadings to resolve factual disputes concerning [subject matter] jurisdiction").

### III. ANALYSIS

The Government raises many arguments as to why the Court ought to dismiss Jagun's Complaint or grant summary judgment in its favor.[13] However, because the Court concludes it lacks subject matter jurisdiction over any conceivable claim raised in Jagun's pleadings, it need not reach most of the Government's arguments.

### A.      Privacy Act Claims

The Privacy Act of 1974 governs how federal agencies collect, maintain, use, and disseminate records containing information about an individual, when those records are maintained as part of a "system of records." 5 U.S.C. § 552a(a)(1)-(5) and (b). The Act generally requires agencies to "maintain all records which are used by the agency in making any

---

[13] For instance, the Government argues Jagun's claims are barred by the doctrine of res judicata, or are mooted by ICE's and the FBI's eventual amendment of Jagun's information as described in on page 8, *supra*. *See* Mot. Dismiss at 13-16, 18-19. Because the Court finds it has lacks jurisdiction for reasons apart from mootness or res judicata, it makes no holding on either of these issues.

determination about any individual with such accuracy, relevance, timeliness and completeness as is reasonably necessary to assure fairness to the individual in the determination." *Id.* § 552a(e)(5). The Act requires agencies to allow an individual to request amendment of records pertaining to him, and inform the individual if the agency refuses to amend its records according to his request. *Id.* § 552a(d)(1)-(3).

An individual may bring a civil action in federal court against an agency that fails to amend a record in accordance with his request, or otherwise fails to maintain any record on that individual as required by the Act, *id.* § 552a(g)(1), and may obtain injunctive relief, actual damages, and costs if he prevails, *id.* § 552a(g)(2)-(4). An action to enforce any liability under the Privacy Act, however, must be brought "within two years from the date on which the cause of action arises," absent material and willful misrepresentation by the agency. *Id.* § 552a(g)(5).

Crucially for this case, the head of an agency that "performs as its principal function any activity pertaining to the enforcement of criminal laws" may, with certain exceptions, promulgate regulations to "exempt any system of records within the agency from any part of this section." *Id.* § 552a(j).

**1. *Claims against the FBI***

The Court interprets Jagun's Complaint to posit that the allegedly erroneous information about him in the FBI's Identification Records system constitutes a violation of the Privacy Act entitling him to an injunction and damages. The Government argues that because the FBI has lawfully exempted its Identification Records from relevant provisions of the Privacy Act, it is immune to Jagun's Complaint. *See* Mot. Dismiss at 17-18. Despite Jagun's rebuke that this

argument amounts to a "ridicule of the law," Pl.'s Resp. Mot. Dismiss ¶ 3, the Court finds it is

the law nonetheless.

The FBI has exempted record systems containing identification records from, among

other things, the Privacy Act's amendment, accuracy, and civil remedies provisions. *See* 28

C.F.R. § 16.96(e)-(f); *see also Witherspoon v. FBI*, No. 96-619(GK), 1997 WL 135718 at *2

(D.D.C. Mar. 17, 1997) ("Criminal Identification Records are exempt from civil suits under the

Privacy Act." (citing 28 C.F.R. § 16.96(e); and citing *Alexander v. United States*, 787 F.2d 1349,

1351 (1986))); *cf. Sieverding v. U.S. Dep't of Justice*, 693 F. Supp. 2d 93, 102-103 (D.D.C.

2010) (rejecting Privacy Act challenge to FBI identification record because FBI exempted

system from amendment and maintenance system (citing *Doe v. FBI*, 936 F.2d 1346, 1351 (D.C.

Cir.1991) ("[T]he FBI has promulgated a rule . . . that exempts its [Central Records System] to

the fullest permissible extent from the requirements of [5 U.S.C. § 552a(d) ].") (alteration in

original)).[14] The record shows that the challenged information about Jagun's encounter with INS

in 1975 is contained within the FBI's identification records system. *See* Mot. Dismiss Ex. 12 at

1-3. The FBI, by exempting this system from the civil remedies provision of 5 U.S.C. § 552a(g),

cannot be subject to a lawsuit either seeking to amend information in that system, or seeking

damages for any alleged inaccuracy it contains. *Cf. McMillen v. U.S. Dep't of Treasury*, 960 F.2d

187, 188 (1st Cir. 1991) (Privacy Act waives sovereign immunity through 5 U.S.C. § 552a(g)).

Insofar as Jagun seeks injunctive relief and damages from the FBI under the Privacy Act, the

---

[14] The FBI's justification for exempting its Identification Records system from civil remedies under the Privacy Act
is described in the following terms:

> [T]hese provisions concern an individual's access to records which concern him. Such access is directed at
> allowing the subject of a record to correct inaccuracies in it. Although an alternate system of access has
> been provided in 28 CFR 16.30 to 34 and 28 CFR 20.34, the vast majority of records in this system concern
> local arrests which it would be inappropriate for the FBI to undertake to correct.

28 C.F.R. § 16.96(f)(2).

Court lacks jurisdiction to hear those claims. *See Durden v. United States*, 736 F.3d 296, 301

(4th Cir. 2013) ("As a sovereign, the United States is immune from all suits against it absent an

express waiver of its immunity." (quoting *Welch v. United States*, 409 F.3d 646, 650 (4th Cir.

2005)).

Jagun's Complaint is **DISMISSED** to the extent it seeks to hold the FBI liable under the

Privacy Act, 5 U.S.C. § 552a, for any and all information on his rap sheet.


**2. *Claims Against USCIS*** [15]

Jagun asserts the same cause of action and requests the same relief from USCIS. *See* Am.

Compl. ¶ 17. Again, the Court finds it lacks jurisdiction to grant such relief.


i. Injunctive Relief under 5 U.S.C. § 552a(g)(1)(A)

To the extent Jagun seeks an injunction requiring USCIS to amend information about

him, he has not exhausted his administrative remedies as required by statute. An individual may

bring an amendment lawsuit under the Privacy Act only if the relevant agency has made a

determination "not to amend an individual's record in accordance with his request." 5 U.S.C. §

552a(g)(1)(A). "In other words, exhaustion of the administrative remedies provided in § 552a(d)

of the Act is a prerequisite to bringing a civil suit to compel amendment of the record." *Olivares

v. NASA*, 882 F. Supp. 1545, 1552 (D. Md. 1995), *aff'd* 103 F.3d 119 (4th Cir. 1996). Jagun has

not sustained his burden of proving that he has exhausted these remedies. There is no evidence

---

[15] As an aside, it seems clear from the Parties' Exhibits that the records documenting Jagun's back and forth with INS in the 1970s that form the basis of his FBI rap sheet are not contained in any system of records within USCIS. Rather, the evidence shows that ICE, not USCIS, is the agency where the "system of records" containing the allegedly erroneous information about Jagun is located. *See* Mot. Dismiss, Ex. 6, ECF No. 11-9. Whether or not Jagun has a valid cause of action against ICE, or can still obtain administrative relief from that agency, is not a question before the Court.

that he even contacted USCIS, let alone submitted a Privacy Act request in accordance with DHS

regulations. *See* 6. C.F.R. § 5.26 ("[R]equest [an] amendment or correction of a record of the

Department . . . by writing directly to the Department component that maintains the record . . .

."); *see also* Am. Compl. Ex. 6, ECF No. 9-7 (e-mail from Ombudsman informing Jagun that he

can seek correction of USCIS file through Form G-639). Because Jagun has not shown that

USCIS "has made a determination not to amend [his] record in accordance with his request," *see*

5 U.S.C. § 552a(g)(1)(A), the Court has no jurisdiction to entertain an amendment lawsuit

against USCIS.


ii. Damages under 5 U.S.C. § 552a(g)(1)(C)-(D)

Jagun also seeks to recover damages from USCIS, which the Court construes to be

brought under 5 U.S.C § 552a(g)(1)(C) and (D). Again, even if Jagun had a plausible cause of

action against USCIS, the Court would have no jurisdiction to hear it.

The Privacy Act's two-year statute of limitations for a damages action under section

552a(g)(1)(C) and (D) begins when (1) an error was made in maintaining the plaintiff's records;

(2) the plaintiff was wronged by such error; and (3) the plaintiff either knew or had reason to

know of the error. *See Diliberti v. United States*, 817 F.2d 1259, 1262 (7th Cir. 1987) (citing

*Bergman v. United States*, 751 F.2d 314, 316 (10th Cir. 1984)); *see also Doe v. Nat'l Sec.*

*Agency*, 165 F.3d 17 (Table), 1998 WL 743665, at *1 (4th Cir. 1998) ("A cause of action arises

under the Privacy Act when 'the person knows or has reason to know of the alleged violation.'"

(quoting *Rose v. United States*, 905 F.2d 1257, 1259 (9th Cir. 1990))). The limitations period is

jurisdictional because it is an "integral condition of the sovereign's consent to be sued under the

Privacy Act." *Bowyer v. Air Force*, 875 F.2d 632, 635 (7th Cir. 1989) (quoting *Diliberti*, 817

F.2d at 1262); *accord Nat'l Sec. Agency*, 1998 WL 743665, at *1. Consequently, "failure to comply with the limitations period deprives the court of subject matter jurisdiction." *Nat'l Sec. Agency*, 1998 WL 743665 at *1; *Bowyer*, 875 F.2d at 635. As the Government rightly points out, Jagun had actual notice of the alleged error that he seeks to challenge now when he filed his 2002 lawsuit. *See* Mot. Dismiss, Ex. 1, *Jagun I* Compl., at 2-3, ECF No. 11-3 (seeking to expunge record that plaintiff was "arrested in Boston" because record "continue[s] to affect my job and entrepreneurship opportunities.") At the very latest, Jagun knew of the record in 2007 when DCPS forwarded him a copy of his rap sheet in response to a job application. *See* Am. Compl., Ex. 5, ECF No. 6. The statute of limitations started to run at least eight years ago, and had therefore expired long before Jagun filed his present Complaint in July 2015. The Court therefore lacks jurisdiction to hear the claims.

For the reasons, Jagun's Complaint is **DISMISSED** to the extent it seeks to hold USCIS liable under the Privacy Act, 5 U.S.C. § 552a.

### B.      FTCA Claims

The Government construes Jagun's Complaint to allege violations of FTCA, 28 U.S.C. §§ 1346(b), 2401(b), and 2671-80, in that it apparently alleges tortious conduct by U.S. federal agencies and their officials. The Government argues, however, that because Jagun has failed to show he pursued such claims administratively before filing suit in federal court, the Court lacks jurisdiction. Mot. Dismiss at 23-24. The Court agrees.

FTCA is a waiver of sovereign immunity, *see United States v. Varig Airlines*, 467 U.S. 797, 808 (1984), that gives federal district courts exclusive jurisdiction over claims against the United States for "injury or loss of property, or personal injury or death caused by the negligent

or wrongful act or omission" of a federal employee acting within the scope of his office or employment," 28 U.S.C. § 1346(b)(1), subject to certain conditions. One antecedent condition is the exhaustion of administrative remedies. FTCA provides that a tort action against the United States "shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). "[T]he requirement of filing an administrative claim is jurisdictional and may not be waived." *Ahmed v. United States*, 30 F.3d 514, 515 (4th Cir. 1994) (quoting *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir.1986)).

The burden is on Jagun to show he filed an administrative tort claim with USCIS or the FBI. *See Kielwein v. United States*, 540 F.2d 676, 681 n.6 (4th Cir. 1976) ("The obligation to prove the [administrative tort claim] rested not on the defendant but on the plaintiff. It was an essential part of her case. Its presence in the case is jurisdictional.") Nothing in the record suggests Jagun has filed with those agencies any claim alleging tortious conduct, so he has failed to meet this burden. The Court therefore lacks jurisdiction.

Accordingly, Jagun's claims that may be construed as being based on allegedly tortious conduct by USCIS or the FBI are **DISMISSED**.


### IV. CONCLUSION

For all the above reasons, Jagun's Motion to Amend his Complaint (ECF No. 9) is **GRANTED**. The Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 11) is **GRANTED**. The Government's Motion to Dismiss for Failure to State a Claim (ECF No. 11) is **MOOT**. The Government's Motion for Summary Judgment (ECF No. 11) is **MOOT**. Jagun's Amended Complaint against USCIS and the FBI is **DISMISSED**.

A separate Order will **ISSUE**.


_____/s/_____

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**August 2, 2016**